IN THE UNITED STATES DISTRICT COURT OF THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

Abdolhossein Aghabozorgi          *
3403 Chatham Rd.
Hyattsville, MD 20783
                                  *
        *Plaintiff*
                                         Case No.:     PJM 14 CV 1806

v.                                *


The Donaldson Group, L.L.C., et al.    *
15245 Shady Grove Rd, Suite 160
Rockville, Maryland 20850

        *Defendants*

*************************************************************************

## PLAINTIFF AGHABOZORGI'S OPPOSITION TO DEFENDANTS TDG AFFILIATES' PARTIAL MOTION TO DISMISS

Plaintiff Abbdolhossein Aghabozorgi hereby files this Opposition to Defendants TDG Affiliates' Partial Motion to Dismiss, and in furtherance of his Opposition states as follows.

Defendant TDG Affiliates are subject to the jurisdiction of this Court despite having not been named in the Plaintiff's initial EEOC Charge given that the entities satisfy the applicable test for "alter-ego" status, and furthermore, Plaintiff Aghabozorgi has plead facts that would support the inference that honoring the corporate separateness of the various entities would be unjust and fundamentally unfair to plaintiff and would not enforce paramount equity.

### *Legal Standard*

Generally, the Plaintiff bears the burden of demonstrating that subject-matter jurisdiction properly exists in federal court and dismissal for lack of subject-matter jurisdiction is appropriate if the material jurisdictional facts are not in dispute and the defendant is entitled to prevail as a matter of law. *See* Owens-Illinois, Inc. v. Meade , 186 F.3d 435, 442 (4th Cir. 1999),

Fed.R.Civ.P. 12(b)(1). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id*. A district court's dismissal of a case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is subject to de novo review.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Defendant may move to dismiss a complaint because it fails to state a claim upon which relief can be granted and when ruling on a defendant's motion to dismiss under this rule, "a judge must accept as true all of the factual allegations contained in the complaint." *See* Bell Atlantic Corp. v. Twombly, 550 U.S. 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)). To survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true, even if doubtful in fact. Bell Atlantic Corp., *supra* at 1965.

### *Argument In Opposition*

### I.      This Court Does Not Lack Subject Matter Jurisdiction Over the TDG Affiliates

Ordinarily, a civil action alleging claims of violation of Title VII may only be brought against the respondents named in the charge filed with the EEOC Commission only after reconciliation efforts have failed, or, in any event, after an opportunity has been afforded to the Commission to make such efforts. Mickel v. South Carolina State Employment Service, 377 F.2d 239 (4th Cir. 1967)(citing Dent v. St. Louis-San Francisco Ry. Co., 265 F. Supp. 56 (N.D.

Ala. Mar. 10, 1967). However, as the Defendants concede, the District of Maryland allows for such an addition "where joinder of a new defendant not named in the EEOC charge is necessary to preserve a plaintiff's Title VII remedies." Armstead v. Becton Dickinson Primary Care Diagnostics, Inc., 919 F. Supp. 188 (D. Md. 1996). The rationale for this ruling is that Title VII's paramount remedial purpose should not be frustrated by a technical error in the naming of the respondent in the EEOC charge but that, at the same time, Title VII's subsidiary purposes of encouraging conciliation of discrimination claims and providing an expeditious remedy should not be frustrated by permitting the plaintiff to laden a law suit with unnecessary defendants not named in the EEOC charge. Kritil v. Port East Transfer, Inc., 6671 F.Supp. 66 (D.Md. 1986); *See also* Borowski v. Vitro Corp., 634 F.Supp. 252 (D. Md 1986).

Defendants mischaracterize the impart of Armstead by asserting that "Aghabozorgi offers no allegation or explanation for why addition of TDG Affiliates is "necessary to preserve [his] Title VII remedies."" To wit, there is no reasonable interpretation of the holding of Armstead which would suggest that any type of explanation of entitlement is required to be set forth in the complaint. Additionally, while the Defendants attempt to buttress their position with reference and application to the "substantially identical" test, the Armstead court expressly stated that "[a]lthough it has alluded to the "substantial identity" test favorably in dictum, the Fourth Circuit has refused to address whether it is willing to adopt the test. Armstead at 192. Upon careful consideration, this Court holds that the rule enunciated in Borowski and Kritil provides a better test for determining when a person, unnamed in the administrative, may be made a party in a subsequent civil suit." *Id.*

Here, joinder of the Defendant affiliates not named in the EEOC charge is necessary to preserve Plaintiff's Title VII remedies based on the following: (1) at all times relevant,

Defendant TDG Financial LLC and Defendant TDG Development LLC were both located and operated at the same address (including suite number) as Defendant The Donaldson Group (2) at all times relevant, Defendant The Donaldson Group represented and warranted to the public on its website that the affiliates were used by Defendant The Donaldson Group to provide cash management and cash flow projections on assets managed by The Donaldson Group (3) at all times relevant, the Chief Executive Officer of Defendant The Donaldson Group, Walter Donaldson, also served as resident agent of Defendant The Donaldson Group Capital Partners, L.L.C., (4) although the Defendant affiliates claim to have been separate and distinct entities during the relevant time, the Defendant affiliates, while operating at the same address as Defendant The Donaldson Group during the relevant time, did not hold themselves out to the Plaintiff that they were separate and distinct entities, and (5) on November 30, 2005, an email was sent from Lisa Francke regarding the "Hot Shop" Program (the implementation of which Plaintiff alleges was discriminatory towards him) to all property managers, Regional managers, Carl Einsel (resident agent of Defendants TDG Financial LLC and TDG Development LLC, and Principal of Defendants TDG Financial, LLC, TDG Development LLC, and The Donaldson Group Capital Partners) and William Donaldson (Chief Executive Officer of The Donaldson Group, resident agent of Defendant The Donaldson Group Capital Partners, LLC., and Principal of Defendants TDG Financial, LLC, TDG Development LLC, and The Donaldson Group Capital Partners). *See Exhibit 1* [Affidavit of Plaintiff], *Exhibit 2* [E-mail from Lisa Francke], *Exhibit 3* [Bio of Walter Donaldson], *Exhibit 4* [Bio of Carl Einsel]; *see also* Complaint. Based on the factors enumerated above, the joinder of the new Defendants to this suit who were not named in the EEOC charge is necessary at this stage of the proceedings to preserve Plaintiff's Title VII remedies including but not limited to compensatory and punitive damages.

**II.     Plaintiff Aghabozorgi Has Sufficiently Plead A Claim Upon Which Relief Shall Be Granted Against TDG Affiliates**

**A.  Under A *Proper* Analysis of federal common law and Maryland law, Plaintiff Aghabozorgi has made a sufficient showing of "alter-ego" status of the TDG Affiliates.**

Defendants fall short in their analysis of how courts which apply federal common law determine whether the piercing of the corporate veil is appropriate. Conspicuously absent from their list of "numerous factors" that courts which apply federal common law consider is whether the corporation is merely a façade for the operations of the dominant stockholder or stockholders. DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co., 540 F.2d 681, 684, 687 (4th Cir.1976); *see also* Complaint at caption.  Notwithstanding Defendant's omission, while gross undercapitalization, insolvency, siphoning of funds, failure to observe corporate formalities and maintain proper corporate records, non-functioning of officers, control by a dominant stockholder, and injustice or fundamental unfairness are factors to be considered, it is well settled that whether the corporate veil should be pierced is necessarily a factual inquiry to be conducted on a case-by-case basis and courts will not hesitate to take such action when justice so requires. In re County Green Ltd. Partnership, 604 F.2d 289, 292 (4th Cir. 1979). Determining when "justice so requires" necessitates a careful review of the circumstances of each case--a factual inquiry particularly within the province of the district court. DeWitt Truck Brokers, Inc. at 540 F.2d 681, 684. Because of the discretion properly afforded district courts in making such inquiries, the district court's ultimate determination is "regarded as 'presumptively correct and [will] be left undisturbed on appeal unless it is clearly erroneous.' " *Id.* (quoting G.M. Leasing Corp. v. United States, 514 F.2d 935, 939 (10th Cir.1975), rev'd in part and aff'd in part,  429 U.S. 338,  97 S.Ct. 619,  50 L.Ed.2d 530 (1977)).

Likewise, Defendants fail to fully set forth the factors that courts applying Maryland law consider when conducting a similar inquiry into whether to disregard the corporate form. Specifically, while Defendants state that the inquiry based on Maryland law is only expanded by "also requir[ing] allegations of "fraud or similar conduct", the most frequently enunciated rule in Maryland is that although the courts will, in a proper case, disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist, shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud ***or enforce a paramount equity***. Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc., 340 A.2d 225, 275, 310 Md. 295 (Md., 1975)(emphasis added), <u>Damazo v. Wahby</u>, 259 Md. 627, 633,270 A.2d 814 (1970); *see also* <u>Gordon v. SS Vedalin</u>, 346 F.Supp. 1178, 1181 (D.C.Md.1972); <u>Md. Trust Co. v. Tulip Realty</u>, 220 Md. 399, 414, 153 A.2d 275 (1959). In consideration of the *complete* scope of the differentiating factor under Maryland law which references and includes a provision accounting for paramount equity, Plaintiff Aghabozorgi respectfully submits that under either federal common law or Maryland law, the Complaint against the TDG Affiliates shall not be dismissed.

**B.  Plaintiff Aghabozorgi's Complaint is sufficient to state a claim against the TDG Affiliates on an alter-ego theory of liability.**

As to the TDG Affiliates, Plaintiff's Complaint states as follows:

> "3.    Defendant TDGF LLC was, at all times relevant, a limited liability company licensed to do business in the State of Maryland since June 20, 2005. According to this Defendant's Articles of Organization, the purposes of this limited liability company are to provide clients with accounting services, financial management services, financial reporting services, collection services, and employment background research and related services, and to do any and all things necessary, convenient, or incidental to that purpose. This Defendant, at all times relevant, operated under the auspices, direction, and control of Defendant TDG given as follows according to Defendant TDG's website:

> "*Through our affiliate*, *TDG Financial, we provide robust cash management and cash flow projections for each asset we manage on both a cash and an accrual basis (as requested)*. *Through TDG Financial*, we also generate appropriate property charts of accounts, develop and administer payable and accounts receivable processing, general ledger administration and bookkeeping services. *The members of the TDG Financial team are experts in developing custom financial and marketing report writing for our clients*. We generate and format customized individual property and consolidated cash flow statements, balance sheets, general ledgers, and disbursement journals *to suit each of our clients' individual requirements*. Payroll services, debt collection services, bank statement reconciliations, financial statement analyses, and accounting and financial management training services are also available to fill our clients' needs." (emphasis added)

Defendant TDGF LLC and Defendant TDG are alter egos of each other.

4.      Defendant TDGD LLC at all times relevant, a limited liability company licensed to do business in the State of Maryland since June 20, 2005. According to this Defendant's Articles of Organization, the purposes of this limited liability company are (i) to provide clients with comprehensive third party development and construction management services, including condominium conversions, condominium development, townhouse development, multifamily residential apartment development, and any other type of real estate development and/or construction project, (ii) to identify, structure, participate in, promote and market development projects, and (iii) to do any and all things necessary, convenient, or incidental to the foregoing. This Defendant, at all times relevant, operated under the auspices, direction, and control of Defendant TDG given as follows according to Defendant TDG's website:

> "*Through our affiliate*, TDG Development, our team provides clients with third-party construction contract management, in-house renovation and rehabilitation services, specialized engineering and consulting services, existing property condition evaluations, and zoning and permitting services. Members of our development team:
> •*Assist our clients* in defining relevant scopes of work;
> •Develop comprehensive budgets and project time-lines for major renovations and capital improvements programs;
> •Negotiate and advise our clients regarding construction agreements and amendments;
> •Develop (as appropriate) or review plans and specifications,
> •Coordinate and direct pre-bid conferences;

7

•Supervise and monitor the performance of contractors, subcontractors, material suppliers and other consultants;
•Coordinate with lenders to obtain replacement reserve refunds and lender construction and renovation hold-backs; and,
•***Develop and provide our clients*** with highly detailed custom reports tracking all construction and renovation expenses during the life of a project, and coordinate." (emphasis added)

Defendant TDGD LLC and Defendant TDG are alter egos of each other.
5.     Defendant TDGCP LLC was, at all times relevant, a limited liability company licensed to do business in the State of Maryland since June 14, 2004. According to this Defendant's Articles of Organization, the purposes of this limited liability company are to (i) identify, structure, participate in, promote, and market real estate investment opportunities, (ii) to engage in other business opportunities relating to real estate, and (iii) engage in any other act or activity for which limited liability companies may be formed under the general laws of the State of Maryland. Defendant TDGCP LLC and Defendant TDG are alter egos of each other."

Under federal common law, this case is distinguishable from In re American Honda Motor Co. in that the Plaintiffs plead bald factual allegations and assertions in their Complaint regarding their alter ego claims against the corporate parent, whereas here, there are express warranties and a holding out to the public by the corporate parent as to the use of the defendant affiliates as merely a façade for the operations of the dominant parent. *See* DeWitt Truck Brokers, Inc., *supra*; *see also* In re Am. Honda Motor Co. Dealerships Relations Litig., 941 F. Supp. 528, 551 (D.Md. 1996). Specifically, Plaintiff alleges control by a dominant stockholder, Walter Donaldson, who founded Defendant The Donaldson Group (a full service real estate management and investment company) in 1998, and Plaintiff's cites to the online warranties and representations by Defendant The Donaldson Group regarding the Defendant affiliates exhibits a lack of corporate seperateness given that actions of these subsidiaries, quite explicitly, are strictly subject to the control of the parent (e.g. "through its affiliates ") and, by admission, are for the benefit of Defendant The Donaldson Group and their clients (e.g. "Through our affiliate, TDG

Financial, we provide robust cash management and cash flow projections *for each asset we manage* on both a cash and an accrual basis (as requested)", "assist our clients", "develop and provide our clients", etc.).

Under Maryland law, piercing the corporate veil in this instance is appropriate, particularly based on the application of the principle of enforcing paramount equity. Plaintiff has pled that the Defendant affiliates were used by and for the benefit of Defendant The Donaldson Group based on the express warranties and representations made by Defendant The Donaldson Group and referred to in Plaintiff's Complaint. These warranties and representations taken together raise an inference of injustice and fundamental unfairness in allowing these entities to attempt to convince this Court to turn a blind eye to their corporate shell game. Therefore, Plaintiff Aghabozorgi respectfully requests this Court to deny Defendants' Motion to Dismiss, and grant any other relief which this Court deems necessary in the interests of justice.

Respectfully submitted,

<u>Governor E. Jackson, III /s/</u>
(Bar No. 27673)
Law Office of Governor Jackson, III LLC
400 E. Joppa Rd.
Suite 50
Towson, Maryland 21286
(410) 528-5150
gjackson@governorjacksonlaw.com

<u>Nicole Farmer Jackson, Of Counsel /s/</u>
(Bar No. 28180)
Law Office of Governor Jackson, III LLC
400 E. Joppa Rd.
Suite 50
Towson, Maryland 21286
(410) 528-5150
nicolefjackson@aol.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that Plaintiff's Opposition to Defendant's Partial Motion to Dismiss was filed via the electronic case filing system on this 17th day of July, 2014.

<u>Governor E. Jackson, III</u>
(Bar No. 27673)

IN THE UNITED STATES DISTRICT COURT OF THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

Abdolhossein Aghabozorgi                    *
3403 Chatham Rd.
Hyattsville, MD 20783
                                            *
    *Plaintiff*
                                                        Case No.:    PJM 14 CV 1806

v.                                          *


The Donaldson Group, L.L.C., et al.         *
15245 Shady Grove Rd, Suite 160
Rockville, Maryland 20850

    *Defendants*
**************************************************************************

## <u>ORDER</u>

Upon consideration of Defendant Affiliates Partial Motion to Dismiss, and Plaintiff's

Opposition, it is on this _____ day of _____, 2014, hereby:

**ORDERED:**  That Defendant's Partial Motion to Dismiss is denied.




_____
Date

                                    _____
                                    Judge,
                                    United States District Court of the
                                    District of Maryland